# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

YOLANDA SANCHEZ and
VERONICA HERNANDEZ,
As Co-Personal Representatives of the
Estate of Ramon Hernandez, Deceased,

       Plaintiffs,

v.                                        CIV. NO. 05-1013 WPL/WDS

BOARD OF COUNTY COMMISSIONERS
OF DONA ANA COUNTY, NEW MEXICO,
CHERYL ROACH, in her official capacity as
the Acting Administrator of the Dona Ana County
Detention Center,

       Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Plaintiffs Yolanda Sanchez and Veronica Hernandez filed suit against the Board of County Commissioners of Dona Ana County, New Mexico and Cheryl Roach, in her official capacity as the Acting Administrator of the Dona Ana County Detention Center. Plaintiffs claim that the Defendants violated 42 U.S.C. § 1983 and the New Mexico Tort Claims Act by failing to provide adequate medical care and attention to Ramon Hernandez in February of 2005 while he was incarcerated at the Dona Ana County Detention Center. Defendants have filed a Motion for Summary Judgment. (Doc. 26.) There is no evidence that Defendants were deliberately indifferent to the medical needs of Ramon Hernandez to support a claim under 42 U.S.C. § 1983. Also, Plaintiffs have failed to show that Hernandez was injured by the actions of law enforcement officers acting within the scope of their duties to establish liability under the New Mexico Tort Claims Act. Thus, this Order will grant

Defendants' Motion.

FACTUAL BACKGROUND

In the early morning hours of February 23, 2005 Ramon Hernandez was arrested by Officer Lujan of the Las Cruces Police Department and charged with Criminal Trespass.[1] Hernandez was transported to the Las Cruces Police Station, where Officer Lujan believes Hernandez had a seizure. Officer Lujan took Hernandez to Mountain View Regional Medical Center (Medical Center), where he was examined by medical personnel. Medical personnel did not notice any evidence that Hernandez was in acute distress or discomfort, and subsequently discharged Hernandez, who was then transported by Officer Lujan to the Dona Ana County Detention Center.

Venus Skinner, a Certified Nursing Assistant, completed a medical screening of Hernandez at approximately 4:00 a.m. on February 23, 2005 before Hernandez was booked into the Detention Center. Hernandez told Skinner that he suffered from seizure activity, epilepsy and was taking medication. Hernandez also stated that he had a Vagal Nerve Stimulator (VNS) implant to help treat his seizures but did not have with him the magnet necessary to use it. Skinner did not know that Hernandez had recently been seen at the Medical Center for a possible seizure earlier that evening, and did not obtain Hernandez's  medical records from the Medical Center. She also did not obtain his prescription medicine for him. Skinner cleared Hernandez to enter the Detention Center, and did not refer Hernandez to the Detention Center infirmary.

During booking Hernandez appeared to be upset, and told the Detention Center officers that

---

[1] Plaintiffs did not dispute any of the material facts set out in Defendants' Motion for Summary Judgment, but did submit additional material facts in their Response. (Doc. 30.) Other than the conclusions drawn by Plaintiffs' expert, Dr. Roderic Gottula (¶¶ 40-49), Defendants did not dispute any of the factual information set out in Plaintiffs' Response.

he should not be there. Sergeant Olayo, the booking sergeant, thought Hernandez was very intoxicated. Sometime after the medical screening was completed, the screening information about Hernandez was entered into the computer. Later that day Mike O'Connell, a Certified Nurse Practitioner, reviewed the screening records.

On February 24, 2005 Municipal Court Judge M. Miller Byrnes ordered Hernandez released from the Detention Center, and Hernandez was released at 12:53 p.m. Detention Center Officer Aguirre walked Hernandez out of the facility.

On February 25, 2005 Hernandez was found in the main lobby men's bathroom at the Detention Center, either asleep or passed out in a stall. Officer Flores went in to wake Hernandez. Hernandez told Flores that he was okay. Sgt. Olayo thought that Hernandez was wobbly on his feet and had glassy eyes, but she did not think he was intoxicated. Hernandez stated that he had a home and knew where it was,[2] but would not give an address or any information to Detention Center personnel to allow them to contact anyone on his behalf. Hernandez was wearing only a short sleeve t-shirt and did not have any shoes. Detention Center personnel provided him with a pair of shoes and a jacket, and Hernandez subsequently left the facility on his own without any Detention Center employee performing a medical assessment on him.

On February 27, 2005 at approximately 11:52 p.m. Hernandez was found dead at the Tresco building located adjacent to the Detention Center. The Office of the Medical Investigator (OMI) concluded that the manner of death was natural and that Hernandez died of idiopathic seizure

---

[2] Although not set out in the Undisputed Facts, the parties agree that Hernandez lived a few blocks away from the Detention Center. (Doc. 31 at 4; Doc. 34 at 4.)

disorder.[3] The OMI report also stated that, although Hernandez's "Phenobarbital was therapeutic at 1.2 mg/L, seizures do occur despite therapeutic concentrations of anti-epileptic medications."

STANDARD OF REVIEW

Hernandez, as a pretrial detainee, was entitled, under the Fourteenth Amendment's due process clause, to at least the same degree of medical attention as that afforded convicted inmates under the Eighth Amendment. *Barrie v. Grand County*, 119 F.3d 862, 867 (10th Cir. 1997). Thus, Plaintiffs' claims must be judged under the "deliberate indifference to serious medical needs" test of *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *Id*. Because the Defendants have filed a motion for summary judgment, I must review the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the plaintiffs. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). To avoid summary judgment Plaintiffs must set out specific facts that demonstrate a genuine issue of material fact, and may not rely on speculation, conjecture or surmise. *Id*.

DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

In *Estelle,* the Supreme Court first recognized that a prison official's deliberate indifference to the serious needs of an inmate is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle*, 429 U.S. at 104. The Court determined that a negligent failure to provide adequate medical care, or even medical malpractice, did not rise to the level of a constitutional violation, but that deliberate indifference to a prisoner's serious illness or injury stated a cause of action under 42 U.S.C. § 1983. *Id*. at 106.

---

[3] Dr. Gottula criticized this conclusion because the OMI pathologist noted there were no bite marks on the tongue, which would be suggestive of a seizure actually happening, and concluded that "it appears just as likely to me that Mr. Hernandez died of exposure as a result of altered mental status." (Doc. 30, Exhibit 2, ¶ 17.)

4

The Court clarified the standards applicable to deliberate indifference claims in *Farmer v. Brennan*, 511 U.S. 825 (1994), and set forth a test that included both an objective and a subjective component. Under the objective component, the plaintiff must produce evidence that the alleged deprivation is "sufficiently serious." *Id*. at 834. Under the subjective component, the plaintiff must present evidence that the prison official has a "sufficiently culpable state of mind." *Id*. A prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

Although the Supreme Court in *Estelle* and *Farmer* did not define what constitutes a serious medical need, the Tenth Circuit Court of Appeals has examined this issue in a number of recent cases. In *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999), the Tenth Circuit stated that a "medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). A delay in medical treatment constitutes an Eighth Amendment violation only when the plaintiff can show that the delay resulted in substantial harm. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000). A lifelong handicap, permanent loss or considerable pain satisfy the substantial harm requirement. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

Whether a medical need is sufficiently serious is determined by the ultimate harm suffered by the inmate, not by whether the symptoms displayed by the inmate to the prison official are serious. *Id*. at 753. Although "not every twinge of pain suffered as the result of delay in the receipt of medical care is actionable," suffering severe chest pains that culminate in a heart attack is sufficient to

establish a serious medical need. *Id.* at 753-55. Other examples of medical needs that courts have found serious include endocarditis, *Self*, 439 F.3d at 1233, bleeding, swelling and infection in the mouth, *Johnson v. Mullin*, 422 F.3d 1184, 1186 (10th Cir. 2005), and the reattachment of a severed finger and subsequent worsening of the wound due to decaying tissue. *Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001).

Concerning the subjective component of the test, the Tenth Circuit has recognized two types of conduct which constitute deliberate indifference: (1) a medical professional may fail to treat a serious medical condition properly; and (2) a prison official may prevent an inmate from receiving medical treatment or may deny him access to medical personnel capable of evaluating the need for treatment. *Sealock*, 218 F.3d at 1211. Under the second category, a "medical professional [who] knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition" may be liable if "he delays or refuses to fulfill that gatekeeper role due to deliberate indifference." *Id.* The subjective inquiry is limited to consideration of the prison official's knowledge of the symptoms displayed by the inmate at the time he has contact with the inmate. *See Mata*, 427 F.3d at 753.

Objective Component

Once an inmate selects the harm he claims that he suffered, the focus of the objective component is solely on whether that harm is sufficiently serious. *Id.* Defendants assert that Plaintiffs cannot meet the objective component because Hernandez did not suffer from a serious medical condition while he was incarcerated at the Detention Center. Defendants admit that Hernandez had been diagnosed with a seizure disorder and had been prescribed medication and a VNS for treatment of this condition, but claim that Hernandez failed to exhibit symptoms which would require immediate

6

medical treatment for this condition.

In response, Plaintiffs appear to pursue two separate theories. First, Plaintiffs argue that Hernandez suffered from a serious medical condition because he had been diagnosed with a seizure disorder, and that the mandated treatment included both medication and a VNS. Second, Plaintiffs appear to argue that Hernandez suffered from an altered mental status while he was incarcerated, and note the difference between Hernandez's behavior at the Medical Center (he did not appear intoxicated or irritable) and the behavior he exhibited during the booking process (he appeared "very intoxicated," and was cursing, upset and stating that he should not be there). Dr. Gottula concluded that, given Hernandez's symptoms, he should have been returned to the Medical Center instead of being incarcerated or, at a minimum, placed in the Detention Center infirmary and checked regularly. Plaintiffs assert that they have raised an issue of fact concerning whether Hernandez had a serious medical condition that needed treatment.

Although Hernandez's seizure disorder was a serious medical condition, there is no evidence that Hernandez needed medical attention to treat it while he was incarcerated at the Detention Center for approximately 33 hours. He had been evaluated at the Medical Center just before being transported to the Detention Center, and the Medical Center ER physician did not hospitalize Hernandez or prescribe medical treatment for him at that time. Hernandez did not make any complaints to Skinner or ask her for any treatment during the screening process. In addition, Skinner's screening records were reviewed by Nurse Practitioner Mike O'Connell later in the day on February 23, 2005, and O'Connell did not prescribe any treatment after reviewing the records. Further, there is no evidence that Hernandez exhibited or complained to any Detention Center official of any symptoms that normally precede a seizure, and it is undisputed that his Phenobarbital level was

7

therapeutic at the time of his death.

While Plaintiffs note that Hernandez was irritable and confused during booking, these symptoms are vague and not specific enough that Sgt. Olayo "would easily recognize the necessity for a doctor's attention." *Hunt*, 199 F.3d at 1224. This situation is distinguishable from that presented in *Oxendine*, where the Tenth Circuit found that a reattached finger tip that was turning black and decaying was so obvious that a lay person would recognize that prompt medical attention was necessary. *Oxendine*, 241 F.3d at 1278.

Assuming that Hernandez had a medical condition that needed treatment, Plaintiffs must present evidence that the delay in treatment caused Hernandez substantial harm. In *Sealock*, although the Plaintiff did not present specific medical evidence that his heart was damaged as a result of delay in treatment, he presented evidence that he experienced severe pain and suffering as a result of the delay. *Sealock*, 218 F.3d at 1210. The Tenth Circuit found that this evidence sufficiently established the objective element. *Id.*; *see also Mata*, 427 F.3d at 754-55 (severe chest pain satisfies objective component of test)*; Oxendine*, 241 F.3d at 1278 (permanent loss of part of finger due to decay of tissue as a result of delay in treatment). There are no similar claims presented in this case. There is no evidence that Hernandez experienced any pain and suffering or any medical problems while he was incarcerated.

Plaintiffs have failed to establish that Hernandez suffered from a serious medical condition that mandated treatment while incarcerated, and that any delay in treatment caused him substantial harm. Accordingly, Defendants are entitled to summary judgment under the objective component of the deliberate indifference test.

Subjective Component

Assuming that Plaintiffs satisfy the objective component of the deliberate indifference test, in order to avoid summary judgment, Plaintiffs must produce evidence that supports an inference that Defendants knew about and disregarded a substantial risk of harm to Hernandez's health and safety. *Id*. at 1276. Defendants' knowledge can be demonstrated through circumstantial evidence: "Whether the prison official had the requisite knowledge of a substantial risk to an inmate's health or safety 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id*. (quoting *Farmer*, 511 U.S. at 842). A claim that the need for additional medical treatment or referral to a specialist is obvious can arise in the following contexts: (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise, but nevertheless declines or unnecessarily delays referral; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition; and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency. *Self*, 439 F.3d at 1232. Plaintiffs are unable to demonstrate that Defendants knew about and disregarded a substantial risk of harm to Hernandez's health and safety.

Plaintiffs make a variety of arguments in their attempt to establish subjective disregard by Defendants. Plaintiffs emphasize that Skinner did not ask Officer Lujan whether Hernandez had a seizure earlier that evening, and did not obtain Hernandez's medical records from the Medical Center. These omissions at most would constitute negligence and would not demonstrate that Skinner knew of and disregarded an excessive risk to Hernandez's health or safety. *Id*. at 1233. As long as a medical

professional provides a level of care consistent with the symptoms exhibited by the inmate, absent evidence of actual knowledge or recklessness, the medical professional has not acted with a culpable state of mind. *Id*.

Plaintiffs assert that Hernandez was irritable and confused at the time of booking, which mandated a screening for mental impairment or altered mental status. Assuming that Skinner was present during booking, these symptoms are consistent with a variety of conditions, and the possibility that they could point to other conditions, including mental impairment or altered mental status, does not create an inference that Skinner was deliberately indifferent. *Id.* at 1234.

Plaintiffs also assert that Hernandez was disoriented when he was found in the Detention Center bathroom on February 25, 2005, and claim that it is proper to infer from that fact that he was disoriented when he was released from the Detention Center on February 24, 2005. However, the issue is what information Skinner possessed at the time of screening, and events that occurred subsequent to the screening are not relevant to whether Skinner acted with deliberate indifference when she performed her screening. *Mata*, 427 F.3d at 756.

After she completed the screening Skinner decided not to refer Hernandez to the Medical Center or to place him in the infirmary, and Nurse Practitioner O'Connell did not change this decision after he reviewed the screening records later that day. Although Dr. Gottula states that, based on Hernandez's condition at the time of booking, he would have sent Hernandez to the Medical Center or, at a minimum, placed him in the Detention Center infirmary, this is a classic example of a matter of medical judgment that does not constitute cruel and unusual punishment. *Estelle*, 429 U.S. at 107.

Nothing in the record suggests that any Detention Center official was consciously aware of a serious risk to Hernandez and disregarded that risk. Thus, Defendants are entitled to summary

judgment under the subjective component of the deliberate indifference test.

CLAIMS UNDER THE NEW MEXICO TORT CLAIMS ACT

In their Complaint, Plaintiffs alleged that Defendants were liable under the New Mexico Tort Claims Act, specifically claiming that Defendants violated NMSA 1978, § 41-4-6 and/or § 41-4-12. (Doc. 1, ¶ 33.) At the status conference held on June 8, 2006, Plaintiffs conceded that they had no claim against Defendants under § 41-4-6, but continued to assert the validity of their claims under § 41-4-12. It is Plaintiffs' burden to identify the specific section of the Tort Claims Act that allegedly waives immunity. *Johnson ex rel. Estate of Cano v. Holmes*, 377 F. Supp. 2d 1069, 1084 (D.N.M. 2004).

Section 41-4-12 waives immunity for certain claims asserted against law enforcement officers while acting within the scope of their duties. *Id.* at 1082. A law enforcement officer is defined as "a full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes." NMSA 1978, § 41-4-3(D). Several New Mexico cases have held that jailers at county detention centers are "law enforcement" officers within the meaning of § 41-4-3(D) because they maintain public order and hold accused persons in custody. *Abalos v. Bernalillo County District Attorney's Office*, 734 P.2d 794, 800 (N.M. Ct. App. 1987); *Methola v. County of Eddy*, 622 P.2d 234, 237 (N.M. 1980). The director of a county detention center has also been deemed to be a law enforcement officer because his duties are principally to hold in custody persons accused of criminal offenses. *Davis v. Bd. of County Comm'rs of Dona Ana County,* 987 P.2d 1172, 1183 (N.M. Ct. App. 1999); *Abalos*, 734 P.2d at 800. The plain terms of the statute and the New Mexico cases interpreting it require that the "principal duties" of a person be traditional law enforcement functions

11

before that person will be considered a "law enforcement officer" under the statute. *Johnson*, 377 F. Supp. 2d at 1083 (quoting *Coyazo v. State*, 897 P.2d 234, 237 (N.M. Ct. App. 1995)).

Skinner was not a jailer or correctional officer at the Detention Center, and her principal duties were not traditional law enforcement functions. Plaintiffs have not alleged that Skinner maintained public order or held accused persons in custody. Instead, they recognize that she is the CNA who screened Hernandez prior to his admission to the Detention Center. Plaintiff do not assert that Nurse Practitioner O'Connell was acting as a law enforcement officer when he subsequently reviewed the screening records.

While Cheryl Roach, the Acting Administrator of the Detention Center, would be deemed a law enforcement officer, Plaintiff have not alleged in their Complaint any negligence by Roach that would be sufficient to establish a claim against her. *Compare with Abalos*, 734 P.2d at 800 ("Plaintiff's complaint sets forth allegations of negligence including, among other things, that Hanrahan had a duty to formulate and implement procedures to prevent the mistaken release of violent criminals.") To the extent that Plaintiffs claim that Defendants owed Hernandez a duty to perform a medical assessment on Hernandez when he was found in the Detention Center bathroom the day after his release, Hernandez was no longer in custody at that time, so Defendants had no duty to exercise reasonable care for his health or safety.

Plaintiffs cannot maintain their action against the Detention Center unless they can establish negligence by a public employee who meets one of the waiver provisions of the Tort Claims Act. *Id.* at 799. Plaintiffs are unable to do so in this case. Thus, Defendants are entitled to summary judgment on Plaintiffs' claims under the Tort Claims Act.

12

CONCLUSION

To recover under 42 U.S.C. § 1983, Plaintiffs must prove that Defendants were deliberately indifferent to the serious medical needs of Hernandez. Plaintiffs are unable to meet the objective component of the deliberate indifference test; they have failed to establish that Hernandez had a severe medical condition that mandated treatment while he was incarcerated, that his condition was so obvious that even a lay person would recognize the need for treatment, and that any delay in treatment resulted in substantial harm to Hernandez. Plaintiffs are also unable to meet the subjective component of the test; they are unable to demonstrate that Defendants were consciously aware of a serious risk to Hernandez and disregarded that risk.

To recover under § 41-4-12, Plaintiffs must show that Hernandez was harmed by the negligence of law enforcement officers while acting within the scope of their duties. As a matter of law, Skinner and O'Connell are not law enforcement officers under the statute. There is no evidence that Hernandez was harmed by any actions of Detention Center employees who would be deemed law enforcement officers prior to his release.

It is therefore ordered that Defendants' Motion for Summary Judgment is granted, and Plaintiffs' Complaint is hereby dismissed with prejudice.

IT IS SO ORDERED.

_William P. Lynch_

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.        13